## THOMAS W. BERRY

*v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

1.　GAMING — *power to city authorities to prohibit, must be exclusive.* Unless the charter of a city grants to the municipal authority the exclusive power to regulate gambling houses and gaming, the general law on that subject is not inoperative.

2.　SAME — *where power is concurrent.* If the municipal authority is concurrent, and they licensed such houses, a party acting under such license, could not be indicted and punished under the general law.

If such a power be conferred in general terms upon the city authorities, the general law on that subject is not repealed. The jurisdiction is concurrent, and a judgment rendered in a prosecution instituted by the city would be a bar to a recovery by the State for the same causes.

3.　SAME — *city authorities failing to act under the power granted, State authority in full force.* It cannot be held, if the city authorities refuse or neglect to act under the power granted, that the State authorities are powerless to punish the offense as one against the general law.

WRIT OF ERROR to the Circuit Court of St. Clair county; the Hon. J. GILLESPIE, Judge, presiding.

Berry was indicted at March term, 1864, for gaming — playing at cards for money, in St. Clair county. Trial at October

term following by the court with consent of parties. The prosecution proved the defendant guilty as charged, and that the offense was committed in the city of Belleville, in said county.

The defendant then introduced the charter of the city of Springfield, Illinois, approved February 3, 1840, which charter the prosecuting attorney admitted to have been legally adopted in the year 1850, by the then town of Belleville, as its city charter, and so remained the city charter of Belleville without any alteration with respect to gambling, or the jurisdiction and power to punish therefor, until a new charter was adopted, February 18, 1859. The first named charter has the following sections granting powers to the city council concerning gaming:

ART. 5, SEC. 21. To tax, restrain, prohibit and suppress tippling houses, dram shops, gaming houses, bawdy and other disorderly houses.

"SEC. 35. The city council shall have exclusive power within the city by ordinance to license, regulate and suppress and restrain billiard tables, and from one to twenty pin alleys, and every other description of gaming or gambling."

The defendant then introduced the following, which the prosecuting attorney admitted to be an ordinance of the city of Belleville, duly passed and published according to law on the 26th day of August, 1851, and that this ordinance remained in full force and effect, and still is in force, to wit:

"SEC. 3. Whoever shall, in this city, set up or keep any gaming table or gambling device, at which any game of chance shall be played for money or property, or anything representing money or property, or shall, at any such table or device, or at any game of chance, bet, win, or lose any money or property, either in specie or anything representing the same, or shall suffer any such table or device at which any game of chance is played, to be set up or used in any tenement in his possession, or under his control, shall be deemed guilty of a misdemeanor, and shall forfeit and pay a sum of not less than twenty-five dollars for every offense, and it shall be the duty of the mayor,

on receiving satisfactory information of any such table or device being set up and used, to issue his warrant to the city marshal, commanding him to destroy the same, which warrant shall be immediately executed."

The defendant then introduced the new charter of the city of Belleville, passed February 8, 1859, which the prosecuting attorney admitted as proved and in full force, which new charter is entitled " An act granting a new charter to the city of Belleville, and to reduce the several acts incorporating said city into one act." Section 4, of article 5, of this new charter provides that the city council shall have, among other powers, the power " to license, tax and regulate billiard tables, ten pin alleys and ball alleys, to suppress and restrain disorderly houses, tippling shops, bawdy houses, gaming and gambling houses, lotteries, and all fraudulent devices and practices, and all playing of cards, dice, and other games of chance, with or without betting, and to authorize the destruction of all instruments and devices used for the purposes of gaming."

Sec. 28, of Art. 13, provides as follows :

" Nothing in this act shall be so construed as to deprive the city council of said city, of any powers or authority conferred upon the same, by the act incorporating said city, and the various acts amendatory thereto ; but the city council shall possess and enjoy all the powers and authority heretofore conferred upon the same, except so far as such powers and authority are expressly modified or repealed by this act or the acts heretofore mentioned."

The foregoing was all the evidence. Upon which the court found defendant guilty, and assessed a fine of $25 and costs, and rendered judgment thereon ; to which finding and judgment of the court, defendant then and there excepted. He now prosecutes a writ of error, which, by consent, was heard in the Second Grand Division.

Mr. J. B. UNDERWOOD, for the Plaintiff in Error.

Mr. C. M. MORRISON, State's Attorney, for the People.

27 — 36 ILL.

Mr. JUSTICE BREESE delivered the opinion of the Court:

The plaintiff in error was indicted at the March term, 1864, of the St. Clair Circuit Court for a violation of section one hundred and thirty of the criminal code, and on trial by the court at the succeding October term, was convicted, and a fine imposed of twenty-five dollars and costs, for which judgment was rendered. The offense was committed in the city of Belleville, in St. Clair county, in January, 1864, and was proved as charged.

To make out a defense, the plaintiff in error introduced the charter of the city of Springfield, granted in 1840, and adopted by the then town of Belleville as its city charter in 1850, and which so remained without any alteration until a new charter was adopted, on the eighteenth of February, 1859.

By the twenty-first section, of article five, of the charter first adopted, power was given the city council to tax, restrain, prohibit and suppress tippling houses, and dram shops, gaming houses, bawdy and other disorderly houses.

Section thirty-five gave the city council *exclusive* power by ordinance, to license, regulate and suppress and restrain billiard tables, and from one to twenty pin alleys, and every other description of gaming or gambling. Sess. Laws, 1839–40, page 6.

Under this power, the city passed and published, on the 26th of August, 1851, an ordinance, still in force, of the following purport:

"SEC. 3. Whoever shall in this city set up or keep any gaming table, or gambling device, at which any game of chance shall be played for money or property, or anything representing money or property, or shall at any such table or device, or at any game of chance, bet, win, or lose any money or property, either in specie or anything representing the same, or shall suffer any such table or device at which any game of chance is played, to be set up or used in any tenement in his possession, or under his control, shall be deemed guilty of a misdemeanor, and shall forfeit and pay a sum of not less than

twenty-five dollars for every offense, and it shall be the duty of the mayor, on receiving satisfactory information of any such table or device being set up and used, to issue his warrant to the city marshal, commanding him to destroy the same, which warrant shall be immediately executed."

The plaintiff in error also introduced in evidence the new charter of the city of Belleville, granted on the 8th of February, 1859, and entitled " An act granting a new charter to the city of Belleville, and to reduce the several acts incorporating said city into one act."

Section four, of article five, of this charter, gives the city council power " to license, tax and regulate billiard tables, ten pin alleys and ball alleys, to suppress and restrain disorderly houses, tippling shops, bawdy houses, gaming and gambling houses, lotteries, and all fraudulent devices and practices, and all playing of cards, dice, and other games of chance, with or without betting, and to authorize the destruction of all instruments and devices used for the purposes of gaming."

Section twenty-eight of article thirteen, provides that " nothing in this act shall be so construed as to deprive the city council of said city of any powers or authority conferred upon the same by the act incorporating said city, and the various acts amendatory thereto; but the city council shall possess and enjoy all the powers and authority heretofore conferred upon the same, except so far as such powers and authority are expressly modified or repealed by this act or the acts heretofore mentioned."

The case is brought here by a writ of error on a bill of exceptions containing the above evidence, which was all the evidence introduced by the plaintiff in error on the trial, on this point.

It is insisted by his counsel here, that the charter of the city gave the city council power to provide a punishment for gaming and that they had exercised the power, which by fair implication is exclusive, as the court will not *intend* a double punishment for the same act; and reference is made to the case of *Bennet* v. *The People*, 30 Ill. 389.

That case was an indictment for selling spirituous liquors without a license, in the town of Salem, in Marion county.

Section 132 of the Criminal Code, provides that every person who shall not have a legal license to keep a grocery, who shall sell spirituous liquors to any person by a less quantity than one quart, shall on conviction be fined for every offense ten dollars. Scates' Comp. 397.

By section 14 of chapter 64, the president and trustees of incorporated towns, have the exclusive privilege of granting licenses to groceries within their incorporated limits, the sums received for licenses being paid into the county treasury. Ib. 206.

Salem being an incorporated town, exercised this power, and prescribed certain rules and regulations, under which such liquors could be sold, and we held, the defendant having brought himself within those rules and regulations, could not be lawfully convicted under section 132, of selling without a license. The same view was taken in the case of *Gardner* v. *The People,* 20 Ill. 430.

It is also insisted by the plaintiff in error, that the first charter conferred upon the city exclusive jurisdiction and right to all penalties for violations of their ordinances, and that they have not been deprived of it by the new charter of 1859.

The section (4) we have cited, of article five, of the new charter does not give to the city exclusive jurisdiction over the subject of gaming, or over the various subjects of which it treats, and it includes matters and things not to be found in the old charter. The city has power to restrain gaming, playing of cards, dice, etc., and can destroy all the instruments and devices used for such purpose. This does not repeal the general law on the same subject. If a license be granted to do these things by the city authorities, and they are done under such license, we are clear, that the party could not be convicted under the State law. *Gardner* v. *The People, supra.*

Why was the word "exclusive" omitted from the new charter, if not to limit or modify the power granted by the old charter? The omission of that word does not deprive the city

of any powers or authority conferred by the old charter, and no violence is done to section 28 of article 13. Those powers remain in full force, modified only by the express terms and language of section four of article five. Conferring this power, in this form of language, upon the city authority, does not repeal the general law on the same subject. The jurisdiction is concurrent, and judgment in a case brought by the city for a violation of this ordinance would be a bar to a recovery by the State for the same cause. Suppose the city authorities will not act under the powers granted, can it be said the State authorities are powerless and these offenses shall go unpunished? We do not think such can be the law, or that such a doctrine is founded in justice. The conviction was proper, and the judgment must be affirmed.

*Judgment affirmed.*